IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAURICE MARTIN PRICE, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MARK BALDWIN, et al. | : | NO.  03-2341 |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

BUCKWALTER S. J.                                                                                                    March 26, 2008

Currently pending before the Court are Defendant Mark Baldwin's Motion for Judgment on the Pleadings, Defendant Mary Young's Motion to Dismiss and Plaintiffs' Responses thereto.  For the following reasons, the Court grants both motions in their entirety.

**I.   FACTUAL AND PROCEDURAL HISTORY**

According to the allegations set forth in the Second Amended Complaint, Plaintiff Maurice Martin Price was arrested and charged with attempted kidnapping and related offenses on January 24, 2002.  (Sec. Am. Compl. ¶ 1.)  The following June, District Attorney Theresa Johnson arranged for an inmate informant, Kevin Martin, to be placed in the Berks County Prison in order to obtain information from Plaintiff about his involvement in gang-related activity.  (Id. ¶ 2.)  In exchange for a promise of immunity, Kevin Martin relayed the substance of his alleged conversations with Plaintiff to Johnson - conversations that Plaintiff denied having.  (Id. ¶¶ 3-4.)  Johnson then turned over this information to District Attorney Mark C. Baldwin and Chief Detective Keith Fister.  (Id. ¶ 4.)  According to Mr. Martin, Plaintiff was heavily

involved in gang activity and gang-related crime in the neighborhood, and was the leader of a gang.  (Id.)

On April 3, 2003, while incarcerated, Plaintiff read an article in the Reading Eagle Newspaper entitled "More Money Sought for Anti-Gang Effort."  (Id. ¶ 5.)  The article indicated that the County District Attorney, Mark Baldwin, was applying for an additional $90,000 in state funds in order to crack down on gang activity in Reading, Pennsylvania.  The article quoted Baldwin as saying, "People who have been charged include members of the Bloods, the Latin Kings, the Hudson Street Crew, the Maurice Price Crew and the 18th Street South Siders," thereby identifying Plaintiff as the leader of a gang.  (Id. ¶ 5.)  Notably, Plaintiff had not been arrested on, charged with or convicted of any gang activity or gang-related offenses.  (Id. ¶ 6.)

The following day, Plaintiff's family began receiving threatening phone calls from unknown sources, warning that if Plaintiff continued to represent himself as the Maurice Price Crew, they would commit acts of violence against his family.  (Id. ¶ 7.)  When Plaintiff's sister, Jade Price, inquired further into the threats, the caller stated, "Bitch, I'm with the Bloods.  Tell your brother that if he don't keep his mouth shut you and your family will be killed. . . . Bitch, don't you read the Reading newspaper."  (Id.)

On April 5, 2003, Ms. Price left a message for Officer Keith Fister to inform him of the anonymous phone call and to question why her brother was named in the newspaper as the leader of the Maurice Price Crew.  (Id. ¶ 8.)  Officer Fister never returned her phone call.  (Id.) Ms. Price also contacted the reporter posted on the article, Mary Young, to inquire about the source of the information.  (Id.)  Ms. Young explained that the information she published came from Mark Baldwin's office and was verified by Keith Fister.  (Id.)  When Ms. Price asked her to

2

redact her statement regarding the Maurice Price Crew because it was false and placed Plaintiff and his family in danger, Ms. Young stated that she did not care and was not retracting her article.  (Id. ¶ 8.)  Finally, Ms. Price contacted Baldwin to inform him that his office had put a false article in the Reading Newspaper.  (Id. ¶ 9.)  The person who answered the call simply indicated that Baldwin was not in the office.  (Id.)

Throughout the summer of 2003, Plaintiff's mother, children's mother and sister all received threats as a result of Plaintiff being labeled a gang leader in the newspaper article.  (Id. ¶ 11.)  In addition, Plaintiff was treated differently by both family members and gang members in prison.  (Id.)  On October 23, 2003, Plaintiff was transferred from S.C.I. Camphill to Berks County Prison to attend court on his criminal charges.  (Id. ¶ 11(a).)[1]  Shortly after being assigned to the E unit, an inmate stated to Plaintiff that he was a gang member, hit him over the head with a food tray, told him to stop lying to the D.A. about being a gang leader and asserted that the Bloods were the only gang in Reading.  (Id.)  The whole time Plaintiff was on writ in Berks County Prison, other gang inmates threatened to kill his family and children.  (Id. ¶ 12.)

Again, in February 2004, Plaintiff was taken on writ from S.C.I. Dallas and, while housed in the H unit, he received notes under his cell door that the Bloods were going to kill him for lying to the newspaper.  (Id. ¶ 13).  The notes also indicated that if Plaintiff published another article, they were going to kill Plaintiff's family and children.  (Id.)  Plaintiff showed the notes to the officer working the block that day and the officer turned the notes over to the security department for further investigation.  (Id.)

---

1. Plaintiff's Second Amended Complaint has two paragraph 11s.  For ease of reference, the Court refers to the second of these paragraphs as "¶ 11(a)."

On July 16, 2003, prior to the events of the late summer, Plaintiff filed his initial complaint in this case against Defendants Mark Baldwin and the City of Reading Police Department. The defendants initially moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In response, Plaintiff sought and was granted leave to amend his complaint. On March 14, 2005, Plaintiff filed an amended complaint, naming as defendants Mark C. Baldwin, District Attorney for Berks County; Timothy A. Reiver, Berks County Commissioner; Judith L. Schwank, Berks County Commissioner; Mark C. Scott, Berks County Commissioner and Mary E. Young of the Reading Eagle Newspaper. Although several of the defendants again sought to dismiss the action, Plaintiff was granted leave to file a second amended complaint. In this second amended complaint, filed on June 23, 2005, Plaintiff added as defendants Theresa Johnson, Gerdo Verga, Mark Gresh and Keith Fister, all in their official and individual capacities.

Subsequently, all defendants, except for Young and Gresh, moved to dismiss the claims against them. Via an order dated March 22, 2006, the Honorable James Knoll Gardner dismissed Defendants Schwank, Scott, Reiver, Johnson, Verga and Fister. In addition, Judge Gardner ordered that the federal claims against Defendant Mark C. Baldwin be dismissed, but denied Baldwin's motion with regard to Plaintiff's state-law claims for libel, slander and defamation. In a subsequent order dated March 20, 2007, the Court granted Defendant Gresh's motion for judgment on the pleadings and dismissed him from the case. The sole claims now remaining in Plaintiff's Second Amended Complaint consist of (1) state-law allegations of libel, slander and defamation against Defendant Mark C. Baldwin; and (2) constitutional and state law claims against Defendant Mary C. Young.

Defendant Baldwin filed the instant Motion for Judgment on the Pleadings on March 26, 2007. Defendant Young subsequently filed the instant Motion to Dismiss on April 11, 2007. On March 10, 2008, this case was reassigned from Judge Gardner to the docket of the undersigned. The Court now turns to the motions at hand.

## II. STANDARDS OF REVIEW

The purpose of a motion under Federal Rule of Civil Procedure12(b)(6) is to test the legal sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); see also Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005). The question before the court is not whether the plaintiff will ultimately prevail; rather, the court should only grant a 12(b)(6) motion if "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957)). When considering such a motion, the court must "accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the nonmoving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). Notably, though, the court will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

Under Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the

pleadings." FED. R. CIV. P. 12(c). While motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6) must be brought before, and in lieu of, filing answers, a Rule 12(c) motion is appropriate after the defendants have answered the complaint. Id. The difference between Rules 12(b)(6) and 12(c), however, is purely procedural and there is "no material difference in the applicable legal standards." Spruill v. Gillis, 372 F.3d 218, 223 n. 2 (3d Cir. 2004). Consequently, judgment under Rule 12(c) will only be granted where, viewing all facts and reasonable inferences in the light most favorable to the non-moving party, the moving party has clearly established that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law. Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290-91 (3d Cir. 1988).

### III.   DISCUSSION

#### A.   Defendant Baldwin's Motion for Judgment on the Pleadings

In the first of the two motions pending before the Court, Defendant District Attorney Mark Baldwin seeks dismissal of the remaining state law claims against him. Baldwin argues that even if Plaintiff's Second Amended Complaint properly states a claim for defamation, he is entitled to immunity as a high public official. In light of the prevailing Pennsylvania law, the Court agrees with Defendant Baldwin and grants the motion for judgment on the pleadings.

> Pennsylvania's doctrine of absolute privilege for high public officials,
>
> is unlimited and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, *provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction.*

Heller v. Fulare, 454 F.3d 174, 177-78 (3d Cir. 2006) (quoting Matson v. Margiotti, 88 A.2d 892, 895 (Pa. 1952) (emphasis in original)).² The purpose underlying this immunity is "to foreclose the possibility of suit" and is "thus a means of removing any inhibition which might deprive the public of the best service of its officers and agencies." Osiris Enters. v. Borough of Whitehall, 877 A.2d 560, 567 (Pa. Commw. Ct. 2005), appeal denied, 897 A.2d 458 (Pa. 2006) (internal quotations omitted). Accordingly, defendants are protected from defamation claims if it is apparent from the face of the complaint that "(1) they qualify as high public officials, and (2) the 'allegedly actionable behavior was made in the course of their official duties.'" Cornell Cos., Inc. v. Borough of New Morgan, 512 F. Supp. 2d 238, 275 (E.D. Pa. 2007) (quoting Osiris Enters., 877 A.2d at 567).

To determine whether an individual qualifies as a high public official, the Court must consider "the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions." Ferrone v. Onorato, 439 F. Supp. 2d 442, 455 (W.D. Pa. 2006) (quoting Lindner v. Mollan, 677 A.2d 1194, 1198 (Pa. 1996)). Although the Pennsylvania Supreme Court noted that the parameters establishing high public official status would be delineated by the judiciary on a case-by-case basis, Montgomery v. City of Philadelphia, 140 A.2d 100, 105 (Pa. 1958), it has since conclusively held that a District Attorney is a "high public official" for immunity purposes. McCormick v. Specter, 275 A.2d 688, 689 (Pa. 1971); see also Durham v. McElynn, 772 A.2d 68, 69-70 (Pa. 2001) (reaffirming that district attorneys are high public officials entitled to immunity since "the public interest requires that district attorneys be

---

2. The Pennsylvania Supreme Court held that the Pennsylvania Political Subdivision Tort Claims Act does not abrogate high public official's absolute immunity to civil suits for defamation related claims. Ferrone v. Onorato, 439 F. Supp. 2d 442, 454 (W.D. Pa. 2006) (citing Lindner v. Mollan, 677 A.2d 1194 (Pa. 1996)).

able to carry out their duties without being hampered by civil suits claiming damages for actions taken in their official capacities.")

As to the second part of the inquiry, two factors bear on whether a high public official acted within the scope of his duties at the time of the allegedly defamatory statements: (1) the formality of the forum in which the alleged defamation occurred; and (2) the relationship of the legitimate subject of governmental concern to the person seeking damages for the defamatory utterance. Cornell Cos., 512 F. Supp.2d at 275 (quoting Osiris Enters., 877 A.2d at 568). Repeatedly, courts applying Pennsylvania law have found that a District Attorney speaking at a press conference to inform the public regarding a matter pending in his office is acting within the scope of his duties. See, e.g., McCormick, 275 A.2d at 689 (holding that District Attorney's comments during press conference regarding an on-going investigation of plaintiffs' business dealings with the City of Philadelphia may have been "excessive," but were nonetheless "closely related" to a matter pending in his office and thus within the scope of the privilege.); Pickering v. Sacavage, 642 A.2d 555, 559 (Pa. Commw. Ct. 1995) (finding that statements made by district attorney at press conference that a deceased individual's family withheld critical evidence regarding an investigation into the individual's death were within scope of district attorney's authority and were entitled to absolute immunity); Mosely v. Observer Publ'g Co., 619 A.2d 343, 346-347 (Pa. Super. Ct. 1993) (determining that statements made by District Attorney and published in newspaper regarding a District Attorney and FBI probe of county officials were entitled to absolute immunity since they were closely related to matter pending within the District Attorney's office). The Pennsylvania Supreme Court has emphasized that "it is the public

interest – not that of the official involved – which provides the rationale for the immunity." McCormick, 275 A.2d at 689.

In light of the foregoing, the Court unequivocally finds that Defendant Baldwin is entitled to high public official immunity for the allegedly defamatory statements made at the press conference and published in the Reading Eagle Newspaper. First, as indicated above, the position of District Attorney, being an elected office with considerable policy-making functions, qualifies as a "high public official." Second, the comments by Defendant Baldwin were clearly made within the scope of his office. According to the newspaper article, Defendant Baldwin was applying for additional state funds to crack down on gang activity on the streets of Reading, Pennsylvania. (Sec. Am. Compl. ¶ 5.) In support of his application, he commented that "People who have been charge[d] [include] members of the Bloods, the Latin Kings, the Hudson Street Crew, the Maurice Price Crew and the 18th Street Southsider[s]." (Id.) These remarks constituted an effort to inform the public regarding matters pending within his office and affecting the public interest. Although Plaintiff now argues that the immunity was vitiated by Baldwin's reliance on false information from an informant who never actually spoke with Plaintiff, Pennsylvania jurisprudence is clear that such immunity protects a high public official for damages arising out of "false defamatory statements and even from statements or actions motivated by malice." Heller, 454 F.3d at 177-78 (quoting Matson, 88 A.2d at 895). Accordingly, the Court finds that Defendant Baldwin is entitled to high public official immunity on Plaintiff's state law claims.

In light of this immunity, the Court grants Defendant Baldwin's motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). Absent any remaining claims pending against him, Defendant Baldwin is dismissed from this action.

### B. Defendant Mary Young's Motion to Dismiss

In the second pending motion, Defendant Mary Young, identified by Plaintiff as the author of the Reading Eagle Newspaper article, alleges that Plaintiff has failed to state a claim against her upon which relief can be granted. (Sec. Am. Compl. ¶ 8.) Specifically, Defendant Young asks the Court to (1) declare the federal claims against her meritless and (2) dismiss the state claims against her as time-barred. The Court considers each allegation in turn.

#### 1. Federal Constitutional Claims

Defendant Young first argues that Plaintiff's constitutional claims pursuant to the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution must be dismissed. In particular, she asserts that she was not acting under color of state law and that, in any event, the Second Amended Complaint fails to set forth any factual allegations to support the claimed constitutional violations.[3]

---

3. As a primary matter, it is crucial to note that although Plaintiff asserts claims directly under the Constitution, such claims are not cognizable as written. Plaintiff may pursue violations against non-federal officials of the United States Constitution only under 42 U.S.C. § 1983. Gagliardi v. Fisher, 513 F. Supp. 2d 457, 471 (W.D. Pa. 2007) (citing Smith v. Sch. Dist. of Philadelphia, 112 F. Supp. 2d 417, 430 (E.D. Pa. 2000); Bivens v. Six Unknown Named Federal Narcotics Agents, 403 U.S. 388, 91 S. Ct. 1999 (1971)). While Plaintiff has not cited to section 1983 as a basis for liability in his Second Amended Complaint, the Court remains cognizant of the duty to liberally construe a *pro se* plaintiff's pleadings and apply the applicable law, even if the plaintiff has failed to mention it by name. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). With that principle in mind, the Court deems Plaintiff's constitutional claims to have been brought under section 1983.

    Notably, in addressing the previous motions to dismiss filed in this case, Judge Gardner construed Plaintiff's other federal claims as brought pursuant to 42 U.S.C. § 1983. Price v. Baldwin, Civ. A. No. 03-2341, slip op. at 4 n.4 (E.D. Pa. March 21, 2005).

"Section 1983 'is not a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 1870 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689, 2694, n.3 (1979)). In order to state a cause of action under section 1983, a plaintiff must demonstrate both that "(1) the defendants acted under color of [state] law; and (2) their actions deprived [the plaintiff] of rights secured by the Constitution or federal statutes." Anderson v. Davila, 125 F.3d 148, 159 (3d Cir. 1997).

Defendant Young asserts that Plaintiff's constitutional claims against her fail at this first element. The "color of state law analysis can be difficult, but is grounded in a basic and clear requirement, 'that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995) (quoting West v. Atkins, 487 U.S. 42, 49, 108 S. Ct. 2250, 2255 (1988). "A private action is not converted into one under color of state law merely by some tenuous connection to state action. The issue is not whether the state was involved in some way in the relevant events, but whether the action taken can be fairly attributed to the state itself." Groman, 47 F.3d at 638-39. As a general rule, "[a]ctions by journalists in publishing a newspaper article do not constitute the requisite 'state action' to support state action claims." Idema v. Wager, 120 F. Supp. 2d 361, 371 (S.D.N.Y. 2000); see also Lewis v. City of Trenton Police Dept., 175 Fed. Appx. 552, 554 (3d Cir. 2006) (dismissing section 1983 claims by *pro se* prisoner against newspaper defendants because defendants were not acting under color of state law); Fuller v. Bissell, Civ. A. No. 89-1365, 1989 U.S. Dist. LEXIS 18307, at *3 (D.N.J. Dec. 4, 1989) (where inmate plaintiff alleged that

defendant reporter published a false statement by defendant prosecutor about plaintiff and plaintiff was subsequently threatened and attacked by other inmates as a result of that article, court found that reporter was not acting under color of state law; "[w]hile some entanglements of private actors with the apparatus of the state may satisfy this standard, a newspaper's publication of a prosecutor's remarks plainly does not.").

Nonetheless, "[p]rivate persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions." Dennis v. Sparks, 449 U.S. 24, 27-28, 101 S. Ct. 183, 186 (U.S. 1980); see also Groman, 47 F.3d at 638 ("Where the actors are not state or municipal officials, but are private individuals or associations, we still must address whether their activity can nevertheless be deemed to be under color of law."). In Scheetz v. Morning Call, 747 F. Supp. 1515 (E.D. Pa. 1990), aff'd, 946 F.2d 202 (3d Cir. 1991), a police officer and his wife brought an action under section 1983, against a newspaper, reporter and unnamed police officer after newspaper stories based on information contained in confidential police report were published. Id. at 1517. The newspaper and reporter argued that they were not liable under section 1983 because they were private actors. Id. at 1519. Although the court agreed that, without more, these defendants, as private actors, could not be liable under section 1983, it took heed of plaintiff's allegation that the newspaper and reporter acted in a conspiracy with the unnamed police officer defendant to violate his constitutional rights. Id. at 1519-20. Such a conspiracy, if true, would have established that the private actors were, in fact, acting under color of state law. Id. Finding there to be a question of material fact on this issue, the court declined to grant summary judgment on this ground. Id.

In the case at bar, Defendant Mary Young is a private actor who published the statements entirely in her capacity as a reporter employed by a private newspaper. Had Plaintiff merely alleged that Young's publication of Baldwin's statements violated his constitutional rights, the Court would have found, without hesitation, that Young was not acting under color of state law. Plaintiff, however, argues that Defendant Young conspired with Defendant Mark Baldwin, a state official, to publish the false and fabricated statements in the Reading Newspaper. Given our standard of review on a motion to dismiss under Rule 12(b)(6), the Court must take these allegations as true.

This conclusion, however, does not end the inquiry. When deciding the previous motions to dismiss brought by the other defendants in this case, Judge Gardner expressly held that "there have been no Constitutional violations asserted by plaintiff against any of the defendants," and that "there are no factual averments to support any Constitutional claim." Price v. Baldwin, Civ. A. No. 03-2341, slip op. at 7 n.6, n.8 (E.D. Pa. Mar. 21, 2005). Although Judge Gardner declined to dismiss Defendant Baldwin from the action entirely, he concluded that, "the conduct alleged against defendant Baldwin, at best, sets forth causes of action under state law for slander and defamation. Accordingly, in the absence of any individual conduct or any Constitutional violation we dismiss plaintiff's claim under section 1983 against defendant Baldwin." Id. at 7 n.6.

In light of this legal finding that Baldwin committed no constitutional violation, Defendant Young clearly could not have acted at the behest of or in conspiracy with Baldwin, or any other defendant public official, to violate Plaintiff's rights under section 1983. In turn, absent such a conspiracy or agreement, she could not have acted under color of state law. Indeed,

13

like Judge Gardner, this Court concludes that the cursory allegations against defendant Young – that she wrote the article containing Baldwin's allegedly false statements and that she would not retract the article at Plaintiff's sister's request – set forth no basis for any constitutional violation under the Fifth, Sixth, Eighth and Fourteenth Amendments.  Accordingly, we dismiss the federal constitutional claims against Defendant Young.[4]

### 2. State Law Claims

Having dismissed all the federal claims against Defendant Young, only state law claims of defamation, libel and slander remain.  Young now moves to dismiss these claims on the basis that they are time-barred under Pennsylvania's one-year statute of limitations.  Again, the Court must agree.

"A court may adjudicate statute of limitations on a motion to dismiss if the complaint reveals on its face that it has not been filed within the statute of limitations."  Estrada v. Trager, Civ. A. No. 01-4669, 2002 WL 31053819, at *2 (E.D. Pa. Sep. 10, 2002) (citing Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978)).  Actions for libel or slander brought under Pennsylvania law must be commenced within one year.  42 Pa. Cons. Stat.

---

4.   To the extent Plaintiff brings a claim against Defendant Young under 42 U.S.C. § 1985, his claim does not withstand a motion to dismiss.  To maintain a cause of action for violation of 42 U.S.C. §1985, plaintiff must establish the following: (1) a conspiracy by the defendants; (2) designed to deprive plaintiff of the equal protection of the laws or equal privileges and immunities; (3) the commission of an overt act in furtherance of that conspiracy; (4) a resultant injury to person or property or a deprivation of any right or privilege of citizens; and (5) defendants' actions were motivated by a racial or otherwise class-based invidiously discriminatory animus. Litz v. Allentown, 896 F. Supp. 1401, 1414 (E.D. Pa. 1995).  The element of racial animus is essential to a proper §1985 claim. Robison v. Canterbury Village, Inc., 848 F.2d 424, 430 (3d Cir. 1988); Pratt v. Thornburgh, 807 F.2d 355, 357 (3d Cir. 1986) ("[a]s to the claim founded on 42 U.S.C. §1985(3), we need only say that it was properly denied since it is not alleged that the conspiracy involved in that count was motivated by a racial or class-based animus.").
    Plaintiff neglects to include any allegation of racial or class-based discriminatory animus.  He has not indicated that his status as a member of a protected class was the basis for the Defendant's actions against him.  Moreover, he has not, pointed to one action by Defendant, one racial epithet or one discriminatory remark from which any claim of racial or class-based animus could be inferred.

§ 5523(1). A statute of limitations begins to run at the time the plaintiff's cause of action accrues. Barrett v. Catacombs Press, 64 F. Supp. 2d 440, 443 (E.D. Pa. 1999) (citing 42 Pa. Cons. Stat. § 5502(a)). "The cause of action for defamation accrues on the date of publication of the defamatory statements." Morris v. Hoffa, Civ. A. No. 01-3420, 2002 WL 524037, at *2 (E.D. Pa. Apr. 8, 2002).

In the case before the Court, the Second Amended Complaint reveals, on its face, that Plaintiff's state law claims against Defendant Young are untimely. Plaintiff alleged that, "on April 3, 2003, while confined in the Berks County Prison[,] Plaintiff read an arti[cle] in the Reading Eagle News Paper [entitled] MORE MONEY SOUGHT FOR [ANTI]-GANG EFFORT . . . identifying the Plaintiff as a gang leader . . ." (Sec. Am. Compl. ¶ 5.) The article identified Mary L. Young as the reporter on the article. (Id. ¶ 8.) Plaintiff's sister, Jade Price, called Ms. Young on April 5, 2003 to ask her to retract the article – a request which Young declined. (Id.) Based on these facts, the defamation cause of action accrued on April 3, 2003, the date on which the alleged defamatory statement was published and the date on which Plaintiff became aware of the statement. Under the Pennsylvania statute of limitations, Plaintiff had one year from that date – until April 3, 2004 – to commence a cause of action against Defendant Young. Although he filed his initial complaint on July 16, 2003, he did not amend that complaint to include Young as a defendant until March 14, 2005. Because the limitations period had expired almost a year earlier, the state law claims against Young are untimely.

In an effort to avoid this procedural obstacle, Plaintiff sets forth several arguments. First, he contends that the statute of limitations for his defamation claim is two years, not one. (Pl. Mem. Response to Young Mot. Dismiss 3.) Plaintiff, however, neglects to note

that the two year limitations period to which he refers applies only to personal injury actions and specifically excepts "an action or proceeding subject to another limitation specified in this subchapter." 42 PA. CONS. STAT. § 5524 (emphasis added). As set forth above, the one-year statute of limitations for a defamation action is specifically defined in 42 Pa. Cons. Stat. § 5523(1).[5]

Second, Plaintiff contends that, as *pro se* litigant with a sixth grade reading level and limited knowledge of the law, he is entitled to a tolling of the statute of limitations. He specifically avers that only after receiving help from the prison law library in February of 2005, did he discover that Young was a wrongdoer and could be included as a defendant. As such, he now argues that his claim against Young should be deemed to have accrued in February of 2005, thereby making his state law claims timely.

Liberally construing Plaintiff's allegations, the Court assumes that this argument is an attempt to invoke Pennsylvania's discovery rule, which states that the accrual date is not the date on which the wrong occurred, but the date on which Plaintiff discovered or reasonably should have discovered that she had been injured. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 (3d Cir. 1994). The Supreme Court of Pennsylvania, however, has stated that the discovery rule "arises from the *inability* of the injured, *despite the exercise of due diligence,* to know of the injury, or its cause." Pocono Int'l Raceway v. Pocono Produce, Inc., 468 A.2d 468, 471 (Pa. 1983) (emphasis in original). "[L]ack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations." Id. Plaintiff, in this case,

---

5. The cases to which Plaintiff cites in support of his argument, Wilson v. Garcia, 471 U.S. 261, 105 S. Ct. 1938 (1985) and Boughimer v. Univ. of Pittsburgh, 882 F.2d 74, 78 (3d Cir. 1989), discuss the limitations period for federal claims brought under section 1983, not claims brought under purely state law.

has conceded that he knew of the injury and its cause as of April 3, 2003. He had one full year from that date to gather legal materials and research the issue to determine who he could legally pursue. Nonetheless, almost two years elapsed between the discovery date and the filing of a complaint against Defendant Young. Even giving weight to Plaintiff's claims of ignorance, he has failed to show that he exercised due diligence in discovering and asserting his legal rights.

Finally, Plaintiff attempts to assert the relation-back rule of Federal Rule of Civil Procedure 15(c). Rule 15(c)(1) states,

> An amendment to a pleading relates back to the date of the original pleading when:
>
> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint [120 days], the party to be brought in by amendment:
>
>> (I) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c)(1); see also Garvin v. City of Phila., 354 F.3d 215, 222 (3d Cir. 2003). Thus, for a claim to relate back, the Rule requires that: (1) the claim against the newly named party have arisen "out of the conduct, transaction or occurrence set forth or attempted to be set

forth in the original pleading"; (2) the newly named party receive such notice within the 120 day period set forth in Rule 4(m) that the party will not be prejudiced in maintaining a defense on the merits, and (3) the newly named party knew or should have known, also within the 120 day period, that "but for a mistake" by Plaintiff, "the action would have been brought against [the newly named party]." Singletary v. Penn. Dept. of Corr., 266 F.3d 186, 193-94 (3d Cir. 2001) (citing FED. R. CIV. P. 15(c)). "Notice is the 'linchpin' of Rule 15(c)." Colbert v. City of Philadelphia, 931 F. Supp. 389, 392 (E.D. Pa. 1996) (citing Schivone v. Fortune, 477 U.S. 21, 31, 106 S. Ct. 2379, 2385 (1986)).

Plaintiff clearly satisfies the first element, since the claim against Defendant Young arose out of the occurrence set forth the in the original pleading. He fails, however, to establish the second and third elements. Indeed, he has made no showing that Young received any notice of the litigation during the 120 days following the filing of the initial complaint. The mere fact that Plaintiff's sister contacted Young on April 5, 2003, is insufficient to put her on notice of a lawsuit filed three months later, against a party not remotely related to her and involving an allegation of a defamatory statement not made by her. Nor are there any indications that Young knew or should have known an action would be brought against her but for a mistake concerning identity. As Plaintiff has failed to meet the required showing under Rule 15(c), the Court declines to find that the state law claims against Defendant Young relate back to the time of filing of the original complaint. Accordingly, the Court dismisses them as time barred.

## IV.  CONCLUSION

In sum, Plaintiff has failed to state a claim upon which relief can be granted against either Defendant Baldwin or Defendant Young. The remaining state law claims against

Defendant Baldwin are precluded on the basis of high public official immunity.  The federal law allegations against Defendant Young fail to meet the required legal elements.  Finally. the state law claims against Defendant Young are time-barred under the applicable statute of limitations.  As these are the only claims and the only defendants remaining in this case, the Court dismisses the Second Amended Complaint in its entirety.

        An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAURICE MARTIN PRICE, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MARK BALDWIN, et al. | : | NO. 03-2341 |
| | : | |
| Defendants. | : | |

## ORDER

**AND NOW** this *26th* day of *March*, 2008, upon consideration of Defendant Mark Baldwin's Motion for Judgment on the Pleadings (Doc. No. 84), Plaintiff's Response thereto (Doc. No. 87), Defendant Mary Young's Motion to Dismiss (Doc. No. 86) and Plaintiff's Response thereto (Doc. No. 88), it is hereby **ORDERED** as follows:

1. Defendant Baldwin's Motion for Judgment on the Pleadings is **GRANTED** in its entirety and all remaining claims against Defendant Baldwin are **DISMISSED**;

2. Defendant Young's Motion to Dismiss is **GRANTED** in its entirety and all claims against Defendant **YOUNG** are **DISMISSED**;

3. The Second Amended Complaint is **DISMISSED with PREJUDICE**.

This case is marked **CLOSED**.

BY THE COURT:

*s/ Ronald L. Buckwalter, S. J.*
RONALD L. BUCKWALTER, S. J.